Next case on this morning's docket is the case of People v. Robert Hodge. And we have Ms. Paige Strong for the appellant and Mr. David Sanchez for the applicant. You may proceed, Ms. Strong. May it please the court, counsel. This is an interesting case where the defendant is convicted of residential burglary. And there are two really interesting questions here. First, he was charged with entering the house where he sometimes lived with his father with the intent to commit a theft. The first issue we raised was reasonable doubt on the basis that the state failed to prove two elements. The first question is whether or not the state proved that the defendant entered the house without the authority to do so. The defendant's argument is that he had the authority to do so because he lived there. So he didn't require authority from another source because he had it just by the very nature of the fact that he lived in that house off and on over the years with his father. The defendant's father testified at trial himself that his son had always come and go. He lived there sometimes. Sometimes he'd stay out somewhere else. He'd done that his entire life. His dad had never told him he couldn't come back, that he wasn't welcome in that house anymore. There was no reason for the defendant to believe that he wasn't welcome in that house anymore because, as was his custom, nothing had ever changed. He came, he went, he'd go there for dinner, he'd stay there for a while, he'd stay somewhere else, nothing had ever changed. And he'd never been advised that that arrangement needed to stop. So there's no reason for him to think he didn't have authority to enter that house, and there's no reason to think that he didn't, in fact, have authority to enter that house. I mean, this is no different really than a college student who goes away to school. He still lives at home. I mean, that's still his home. He's still welcome there. Just because he stays in the dorm most of the year, comes home on the weekends or for Christmas or summer, doesn't mean this isn't still his home. This isn't a different situation at all from that. There are other facts that support the idea that this was, in fact, the defendant's home still. Most significantly, his father testified that if you wanted to mail something to the defendant, you mailed it to this house. That's where he received the mail. If state wanted to prove that the drugs found in a house belonged to a particular person, and they found a piece of mail there with that person's name on it, we wouldn't be talking about whether or not we'd proven that person lived there. How is this different? So if this defendant received mail at this house, shouldn't that establish that's where he lives? It would in any other case. Why wouldn't it in this? So that also shows that this was the defendant's house as much as it was anyone's. It doesn't matter that it was titled in Dad's name and not his. Where I grew up, the house was titled in my parents' name. I still live there. Nobody would suggest that I didn't. The legal ownership of the property is not really the issue. And certainly the legal owner is not an exclusive resident of any particular home. It all goes back to what their custom was, and nothing shows here that the custom would have said that the defendant did not live there. So he did have authority to enter the home. The next interesting question is if he did so, if he entered the home with or without authority, with the intent to commit a theft. A theft requires the intent to permanently deprive. And Section 5.15-3 sets out four different ways, or four different meanings of intent to permanently deprive. And the state's right that you have to determine if that intent to permanently deprive was there based on circumstantial evidence. But the state also argues that just the sheer act of taking something is enough. That may raise a presumption of intent to permanently deprive, but it's certainly not an irrebuttable presumption. And in this case, all of the evidence shows that the defendant didn't intend to permanently deprive his father of anything. He intended to temporarily deprive him of it, maybe, which may not be right, but that's not what the theft statute requires. And so that is not enough in this case. Everything he did showed an intent to temporarily deprive. The scanner was pawned, not sold on the street corner, not given away so that he couldn't get it back. It was taken to a pawn shop. And the owner of the pawn shop explained how that works. You bring something in, and there it sits for 30 days. You can extend that 30-day time two times. So essentially you have up to 90 days to come back and get your stuff. He doesn't have the right to sell it, so where's his possessory interest? He doesn't have one, really. Not until day 91. If you don't show up to get your stuff, now you've lost it. Now the pawn shop has a possessory interest. And in this case, we never got to day 91. It never happened. The scanner was gotten back from the pawn shop before that time anyway through a whole series of other weird situations that may be exactly what trips the state up in this case. If they had waited until day 91, then we would have had a little more evidence. But no matter what happened after the day that the defendant arranged for this scanner to be pawned, that doesn't give us any information about what his intent was at that exact time. We need to look at what he did surrounding the time that the scanner was taken from the house and then pawned. That's where we learn his intent. If he intended to permanently deprive his father of it, there are many other ways to have done it. He could have sold it. He could have thrown it in the river. He could have done any number of things. But he chose the one thing that didn't remove his ability to give it back. So that does rebut the presumption that just taking the scanner from the house proves an intent to permanently deprive. And the state didn't have anything else to overcome that. They don't have any other proof that he intended to permanently deprive anyone of this scanner other than the fact that he took it. And in this case, it's just not enough when there's other evidence that refutes it. So essentially the state failed on both counts. They didn't prove that he entered the house without authority and they didn't prove that he intended to commit a theft because they couldn't prove that he intended to permanently deprive anyone of a piece of property. They only proved, perhaps, that he intended to temporarily deprive. And in this case, that's just not enough because that's not enough. So for that reason, he would ask that you would reverse his convictions outright. I could talk about the sentencing issue, but unless the court has any questions, it's pretty straightforward. So I don't see any reason to get into it.  Thank you, Ms. Jones. Thank you very much. We have an opportunity to rebut Mr. Sanchez. May it please the court. My name is David Sanchez. I'm here on behalf of the people. In this case, the evidence was sufficient to convict the defendant of residential burglary. The defendant says that he had authority to enter his father's trailer. However, the record shows that that simply is not the case. Mr. Hodges, that's the father, Mr. Hodges, his own testimony at the trial was that on the date of the incident, he had not given anyone permission to enter his trailer. And this included his son. Moreover, he never gave anyone permission to enter his trailer for the purpose of taking the police scanner, which is what the defendant removed from his trailer. But if he hadn't taken the police scanner, he would have had permission to enter the trailer? Well, he would not have had... What I'm saying is that his father never gave him permission to enter his trailer on that day. But from what I understand, he had an open-ended invitation to enter the trailer. So, was it ever withdrawn, that open-ended invitation? Nothing in the record suggests that there was an open invitation. Nothing in the record suggests that there was an open invitation that was withdrawn. The record does show that the defendant did visit his father from time to time. He would stay there for weeks at times. On the date of the incident, the defendant was not residing with his father. And he hadn't been there for, I think his father said he hadn't been there for a couple of weeks. Maybe a couple of weeks, may have been a week, I'm not entirely sure. But regardless, the limited authority doctrine comes into play. And so, even if he had an open-ended invitation to enter his father's trailer, he did not have an open-ended invitation to enter his father's trailer with the intent to commit theft. And the limited authority doctrine states that the authority to enter a building for a specific lawful purpose is vitiated when the wrongdoer departs from that purpose and commits a theft. And that is precisely what happened in this case. What do you think of Mr. Armstrong's borrowing argument? That he was basically just borrowing the scanner until such time as, I guess, the time was up on the pawn. Right. Well, for that I would say that when assessing the sufficiency of the evidence, the court's inquiry is whether after giving the evidence in the light most favorable to the state, any rational or prior fact could have found the essential elements of the crime beyond a reasonable doubt. And moreover, the prior fact is not required to disregard inferences that flow from the evidence, nor is it required to search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. And that is precisely the argument that Ms. Strawn is making on this appeal, that we need to infer from this act of conning that the defendant was, that that creates reasonable doubt. And the court is, that is just not the standard of review for sufficiency of evidence, of the evidence. I would also point to the statutory language of what permanently depriving someone of property states. It states that to deprive the owner permanently of the beneficial use of the property, what that means is to sell, give, pledge, or otherwise transfer any interest in the property, or subject it to the claim of a person other than the owner. And the act of pawning is exactly that. Once he pawns the scanner, the defendant gives, pledges, and transfers an interest in the scanner to the pawnshop. It doesn't matter that he intended to get it back later. His intent to permanently deprive was established once he, once he committed that act. So, so I think that that pretty much covers it as far as sufficiency of the evidence is concerned. I can get to the sentencing issue as well if this court has any questions about that. Otherwise, I would just request that the court affirm the defendant's conviction and his sentence. Thank you. Thank you, Mr. Sanchez. Ms. Strachan, what do you make of the definition of permanently deprive? I don't disagree with the, in the, his example of the section B, deprive the owner permanently of the beneficial use of the property. You don't think he pledged it? No. Security for the loan? I don't in the, based on the pawnshop owner's testimony himself, that he couldn't do anything with this item until after. Right, that's, that's all pawns are like that. Right, so. But what is a pledge? If you pledge something, it's security for the loan, isn't it? It is security for the loan, but the pawnshop's owner is completely subjected, subjected to. Could the dad come in and say, here, oh, that's mine, I'm going to grab it right now? The dad couldn't, but the person who pawned it could. Why couldn't the dad? It's his. That, because it's not available to the open market. How does the dad show that it's his? Have you brought in the pawnshop ticket? Sure. No, no, he just went in the pawnshop and that's mine. He couldn't get it? Not within the first 90 days, no. Could he give up ownership to something by somebody taking it and taking it to a pawnshop? Not in that first 90 days. I don't see, I don't see that. But where do you see that in the definition? I mean, it doesn't say in the time that the pledging is completed and the loan no longer needs to be secured. It says the act of pledging. Self, give, pledge, or otherwise transfer any interest in the property or subject it to the claim of a person other than the owner. Is that the section you're talking about, section D? Yes. In this case, when the defendant pawned, which the defendant didn't pawn it, Gregory pawned it, actually no, at the request of someone else, not a defendant's request, but in any event, when that was done, the person who takes it in is presenting themselves as the owner. So as far as the pawnshop is concerned, the rest of the world is concerned, the owner at that moment is Gregory, when she pawned the thing. So it's not about who owned it two days before, before it was carried out of the house. As far as this definition is concerned, the owner is the person who pawned the item. Well, if something's stolen, apparently you can never give up ownership. If something is stolen, I'm not sure I'm following you. If somebody comes into your house and steals your watch, no matter when, it's always your watch. Yes, it is always your watch until someone else has a stronger... So you can't pledge, somebody can't come in and get it and pledge it for value and get money. If that's true, then the defendant didn't pledge the scanner for anything either. Because the defendant's father still owned it. Right, his father still owns that scanner. And he still has the right to have it up until day 91. So he didn't pledge it. I guess I'd have to say that the defendant did not pledge it, yes. Yeah, I'd have to say he didn't pledge it. He didn't. If this arrangement was made with, say, his best friend, will you hang on to this, and then I'm going to... I'll give you the scanner, you give me this, and we'll swap that next week. Has he given it away? Has he given up an interest in it? No, it's holding. Can he put it under his bed? But it's not his. If it's not his, can he do that? If it's not... I guess we have to determine the difference between legally and practically, obviously. But when we have to follow the actual plain language of the statute, he hasn't actually pledged it, he hasn't given up ownership, he hasn't done any of those things. Based on the statute itself and the plain language there. I certainly think the state wants to focus on the intent to permanently deprive as it's a foregone conclusion that the minute he walked out of the house with the scanner, he intended to permanently deprive his father of it. That may be a reasonable presumption to start with. If we have no other information, I think it would be fair for the jury to infer that. But we have a lot of other evidence that says a lot of other things were going on that reflect this. We have further proof that he pledged the object. I don't want to use that word. Do we have to use that word? It's unfortunate that the statute uses that word for you, Mr. Vaughn. But the pawnshop's rights to it, that possessory of interest, are completely subjected to the defendant's actions from that point on. Until the 91 days. But the defendant's actions put the pawnshop in a situation where at 91 days they could take possession. At 91 days, yes, they could. Assuming that, you know, each 30-day thing was taken. But we never got to that point. Never. We don't know when he walked in there that he didn't intend to come back and get it in three days. What we do know from the record that we didn't talk about in the brief is that he was in jail. He couldn't have if he wanted to. Isn't that a question of fact for the prior effect? Whether he intended to come back? Yes, it is. Except that in this case the evidence just doesn't support their conclusion that he intended to permanently deprive it as opposed to intending to temporarily deprive it. All the evidence says he intended to temporarily deprive him of it. If he wanted to permanently deprive him of it, why pawn it? Sell the thing. If the point was to get money, sell it. Now we don't have any question about whether he intended to permanently deprive or temporarily deprive. It's gone. He can't undo that transaction. He can't undo the pawning. Thank you. We'll take the matter under advisement. And that concludes our oral arguments for the day.